50 CCPA

**Application of Robert B. BOOTH and John M. Dobson.**

**Patent Appeal No. 6853.**

United States Court of Customs and Patent Appeals.

Dec. 12, 1962.

Samuel Branch Walker (Wm. P. Spielman, Washington, D. C., and E. W. Harmon, of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge JOSEPH R. JACKSON, Retired.

WORLEY, Chief Judge.

Appellants seek reversal of the decision of the Board of Appeals affirming the examiner's rejection of all the claims (1, 3–12, 15–20, and 23–27) in appellants' application[1] entitled "Settling of Ore Pulps and Mineral Suspensions," as unpatentable over certain prior art.

The invention relates to a process for settling finely-divided ore pulps and min-

---

**1.** Serial No. 399,836, filed December 22, 1953.

eral suspensions which are predominantly non-argillaceous (non-clayey) by treating them with small amounts of water-soluble acrylic polymers. Separations such as here involved have long been effected by the action of gravity. The gravitational settling process, however, is slow and inefficient. The object of the present invention is to overcome that deficiency by accelerating the settling process. Polymers found suitable for that purpose include polyacrylic acid, polyacrylamide and polyacrylonitrile. An additional benefit accruing from the use of those polymers is that they function also as aids in filtration, frequently the subsequent step in a mineral recovery process. A limitation upon the present invention is that it is effective only for the recovery of those mineral suspensions which are predominantly non-argillaceous. Such materials are defined by appellants as containing not more than 25% clayey material.

Claims 1 and 17 are illustrative and read:

"1. A process of settling ore pulps and mineral suspensions containing finely-divided, predominantly non-agrillaceous [sic] minerals which comprises treating said ore pulps and mineral suspensions having a pulp density of not more than about 50% solids with a water-soluble polymer of a compound represented by the formula

$$C = C - R$$

wherein R is selected from the group consisting of nitrile, amide, and carboxyl radicals, COOM wherein M is a lower alkyl radical of from 1 to 4 carbon atoms, and water-soluble salts thereof, said polymer being employed in an amount ranging from about 0.005 lb/ton to about 10 lb/ton by weight of suspended mineral solids, said polymer having an average molecular weight of at least 10,000, and allowing the finely-divided mineral solids to settle.

"17. A process of improving the filtration characteristics of acidic ore pulps and acidic mineral suspensions containing finely-divided, predominantly non-argillaceous minerals which comprises treating said ore pulps and mineral suspensions having a pulp density of not more than about 50% solids with an acrylic polymer having at least 50% of the monomer units attached to amide groups, said polymer being employed in an amount ranging from about 0.005 lb/ton to about 5 lb/ton by weight of suspended mineral solids, said polymer having an average molecular weight of at least 10,000, and filtering the treated ore pulps and mineral suspensions whereby improved filtration rates are obtained."

The references relied on by the board are:

Samuel                        2,149,748        March 7, 1939.
Johnson (British)             475,671          November 24, 1937.
Schweitzer, Rubber Chemistry and Technology,
    Vol. 13 (1940) pages 408 to 414.

---◆---

The Schweitzer article, entitled "Creaming of Rubber Latex" is the basic reference. As its title indicates, the article is concerned primarily with creaming of rubber latex. Water soluble salts of polyacrylic acid in concentrations as low as 0.05 to 0.1 percent, depending on the amount of latex present, are taught to be effective creaming agents.

The Johnson patent discloses the preparation of water-soluble polyacrylamide and copolymers thereof, which are said to be useful " * * * for purposes similar to those for which solutions of gum arabic, British gum, starch, dex-

trine, polyvinyl alcohol and polycarboxylic acid salts are used, as for example * * * for creaming latex * * *."

The patent to Samuel relates to the treatment of aqueous suspensions of various types, including water from ore reduction plants. The patentee herein teaches that separation of suspended material from the water is generally accomplished by allowing the suspended material to settle, followed by decanting or filtering. Samuel's particular discovery was that separation of the dispersed material could be facilitated by addition of a flocculating gel, prepared by mixing an amylaceous material, such as corn starch, and a neutral metallic salt, such as zinc chloride. The patentee states:

"The invention may be effectively applied to all types of dispersions, particularly aqueous suspensions * * *, and also to the colloidal or almost colloidal precipitates * *. The addition of the flocculating gel causes the finely divided precipitate to flocculate so that it settles rapidly and may be easily filtered.

" * * * In addition the flocs or flakes are of such a nature that they will drain freely on a filter, * * * so that dispersed material is left in a coarse powdery condition in which it is free from the sliminess which is so commonly associated with other flocculating gels; * *."

The examiner rejected claims 1–6, 18–20, and 25 as unpatentable over Schweitzer alone, claims 3–5, 7–12, and 17 as unpatentable over Schweitzer in view of Johnson, and claims 15, 16, 23, 24, 26 and 27 as unpatentable over Schweitzer in view of Samuel. The board affirmed each of those grounds, stating: " * * we are of the opinion that the alleged invention as a whole is obvious in view of the prior art of record, * * *." The correctness of that position is the sole issue here.

The Schweitzer article is the basic reference, relied on in each of the rejections. The article, as previously noted, is devoted almost entirely to a discussion of various creaming agents for rubber latex. The pertinency of latex creaming to sedimentation of mineral suspensions is the first question to be considered. Appellants state in their brief, "Creaming of rubber takes the name from a phenomena [sic] somewhat like the separation of cream in milk where in standing the cream rises to the top." By contrast, sedimentation involves settling of suspended particles due to gravity. Creaming also differs from sedimentation in several other material respects. Creaming involves concentration which does not break the original suspension. Sedimentation, on the other hand, such as here involved causes the finely-divided particles of mineral solids to stick to each other, i. e., to flocculate. In addition, rubber latex is a natural, colloidal suspension of an organic polymer. It is not a mineral suspension, such as claimed, which will settle by itself in due course of time.

We are of the opinion, therefore, that sedimentation and creaming are so fundamentally different that the disclosure of a material suitable for creaming a rubber latex would not suggest to one skilled in the art the likelihood of its use as a settling agent for ore pulp and mineral suspensions.

The only other disclosure in the Schweitzer article which is relevant for our purposes states:

" * * * the present author found it possible, with the creaming agents described, either to cream or to cause sedimentation (depending on the specific gravity of the emulsified substance) of artificial emulsions and dispersions of organic substances, e. g., emulsions of oils and emulsions of synthetic products of high molecular weights. Furthermore, the addition of very small quantities of these substances causes separation in dispersions of inorganic colloidally dispersed substances, e. g., dispersions of sulfur with retention of its colloidal state of subdivision. * * *"

The board's interpretation of the above matter is that appellants' results "would not be unobvious from the general disclosure of Schweitzer regarding separation of dispersions of inorganic colloidally dispersed substances by addition of very small quantities of these materials, particularly since colloidal substances, in a much finer state of subdivision, would * * *, be expected to be more difficult to separate. * * *"

While Schweitzer's statement appears to be more relevant to the invention at bar than its teaching regarding creaming of rubber latex, it must be considered in light of the entire article, and in a manner that will render the entire paragraph logically consistent. Such a reading indicates to us that while separations in which the particles settle rather than rise, depending on the relative specific gravity of the solid and solvent, may be achieved with the described creaming agents, the "separation" contemplated by Schweitzer is of the same nature as creaming, i. e., a reversible concentration which does not break the original suspension. We find further support for that view in Schweitzer's example of the inorganic colloidally dispersed substance where he speaks of the *retention* by sulfur of its colloidal state of subdivision. In regard to that point, the board held:

" * * * We interpret the Schweitzer disclosure of the retention of the colloidal form of sulfur to refer to this material before, instead of after, separation."

We are constrained to disagree with the board's interpretation, and agree with appellants that it refers to the physical state of the sulfur both *before*, as well as *after* its separation. Hence, we conclude that the Schweitzer reference contains no suggestion that acrylic acid polymers are useful as settling agents for mineral suspension such as claimed. We hold, therefore, that the inventive concept of the present invention is entirely lacking from Schweitzer; hence all the rejections must necessarily fall along with the basic reference. The decision of the board is reversed.

Reversed.